UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ELLIOT ZOMBER,

                              Plaintiff,         MEMORANDUM
                                                OPINION AND ORDER
    -against-
                                                CV 09-4637 (ETB)

P.O. KENNETH STOLZ,

                              Defendant.
----------------------------------------------------------------X

Before the Court is the defendant's motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative, for a new trial, pursuant to Federal Rule of Civil Procedure 59(a), based on certain evidentiary rulings made by the Court during the civil trial of this action. For the following reasons, defendant's motion is denied in its entirety.

### BACKGROUND

Familiarity with the underlying facts of this action is assumed. On October 26, 2006, plaintiff was involved in an automobile accident with the defendant as a result of plaintiff's use of Ambien prior to driving his vehicle. Plaintiff was subsequently arrested and tried, in state court, for driving under the influence, assault in the second degree and assault in the third degree. Plaintiff was convicted of driving under the influence and cleared of the two assault charges. Thereafter, plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging claims for malicious prosecution and denial of the right to a fair trial, on the grounds that defendant testified falsely to the grand jury regarding the nature and extent of the injuries he sustained in the

automobile accident with plaintiff, which led to plaintiff's indictment for assault in the second degree.

A jury trial was conducted in this action from October 3, 2011 to October 11, 2011. Defendant moved for a judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50, at both the close of plaintiff's evidence and the close of all evidence. Both motions were denied. On October 12, 2011, the jury rendered a verdict in favor of plaintiff, finding defendant liable for malicious prosecution and for violating plaintiff's right to a fair trial. The jury awarded plaintiff $276,000 in compensatory damages and $124,000 in punitive damages.

Defendant now moves for judgment as a matter of law, or alternatively, for a new trial, on the following grounds: (1) that the Court erred in denying defendant absolute immunity; (2) that the Court erred in denying defendant's motion for judgment as a matter of law based on the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 447 (1994); (3) that the Court erred by (a) refusing to unseal the grand jury minutes surrounding plaintiff's underlying criminal indictment; (b) denying defendant's motion in limine to preclude the introduction of any grand jury testimony; (c) granting plaintiff's motion to preclude defendant from presenting testimony from an assistant district attorney ("ADA") and a former ADA; and (d) providing a false and prejudicial instruction to the jury; and (4) that the Court erred in permitting plaintiff to introduce medical evidence concerning defendant's physical condition prior to and after the October 26, 2006 automobile accident and precluding defendant from introducing certain certified medical records.

DISCUSSION

I.  Legal Standard

Judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(b), "is appropriately granted only when the court determines that 'there is no legally sufficient evidentiary basis for a reasonable jury to find for a party.'" Ruhling v. Newsday, Inc., No. CV 04-2430, 2008 U.S. Dist. LEXIS 38936, at * 9 (E.D.N.Y. May 13, 2008) (quoting Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 120 (2d Cir. 1998)) (additional citations omitted). Accordingly, "[a] movant seeking to set aside a jury verdict faces a 'high bar.'" Ruhling, 2008 U.S. Dist. LEXIS 38936, at *10 (quoting Lavin-McEleney v. Marist Coll., 239 F.3d 476, 479 (2d Cir. 2001)).

Under Rule 50, a jury verdict should be set aside only where there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," or where there exists "such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against [it]." Ruhling, 2008 U.S. Dist. LEXIS 38936, at *10 (quoting Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 79 (2d Cir. 2006)) (alteration in original). When applying this standard, a court is required to view the evidence in the light most favorable to the non-moving party and must refrain from "assess[ing] the weight of conflicting evidence, pass[ing] on the credibility of the witnesses, or substitut[ing] its judgment for that of the jury." Leblanc-Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir. 1995); see also Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001).

Federal Rule of Civil Procedure 59, which supplies the standard for granting a new trial,

is less stringent than Rule 50.  See Manley v. Ambase Corp., 337 F.3d 237, 244-45 (2d Cir. 2003).  In contrast to a motion for judgment as a matter of law, "a new trial motion may be granted even if there is substantial evidence to support the verdict."  DeWitt v. N.Y. State Housing Fin. Agency, No. 97 Civ. 4651, 1999 U.S. Dist. LEXIS 13057, at *3 n.1 (S.D.N.Y. Aug. 24, 1999) (quoting Bevevino v. Saydjari, 574 F.2d 676, 683 (2d Cir. 1978)); see also Ruhling, 2008 U.S. Dist. LEXIS 38936, at *10 ("On a motion for new trial, the judge may grant a new trial even if there is substantial evidence to support the jury's verdict.").  In addition, the court is not required to view the evidence in the light most favorable to the non-moving party, but may weigh it independently.  See Ruhling, 2008 U.S. Dist. LEXIS 38936, at *11 (citing Manley, 337 F.3d at 244-45).  However, a motion for a new trial may only be granted where "the court is convinced that the jury reached a seriously erroneous result, or that the verdict is against the weight of the evidence," Manley, 337 F.3d at 244-45, or "the trial was not fair to the moving party."  DeWitt, 1999 U.S. Dist. LEXIS 13057, at *3 (quoting Mallis v. Bankers Trust Co., 717 F.2d 683, 691 (2d Cir. 1983)).  "In evaluating a Rule 59 motion, the trial judge's duty 'is essentially to see that there is no miscarriage of justice.'"  DeWitt, 1999 U.S. Dist. LEXIS 13057, at *3 (quoting Sharkey v. Lasmo (AUL Ltd.), 55 F. Supp. 2d 279, 283 (S.D.N.Y. 1999)).

II.     Absolute Immunity

Defendant argues that the Court erred by failing to find him immune from damages liability, even if his grand jury testimony was false.  As the Court previously found in its Memorandum Opinion and Order dated August 10, 2011, police officers "generally enjoy absolute immunity from suit based on the substance of their testimony in judicial and quasi-

judicial proceedings," unless the officer is a "complaining witness." Sclafani v. Spitzer, 734 F. Supp. 2d 288, 296 (E.D.N.Y. 2010). "A complaining witness is one who actively investigated or encouraged the prosecution of the plaintiff." Id. (alteration omitted). An officer who participates in initiating a baseless prosecution by testifying to a grand jury is encompassed by the exclusion for complaining witnesses, and therefore cannot receive absolute immunity.[1] See id. (citing White v. Frank, 855 F.2d 956, 958-62 (2d Cir. 1988)).

In order to be considered a complaining witness, an affiant's testimony need not be the "sole basis" for the indictment. Rather, a "complaining witness is one who actively instigated or encouraged the prosecution of the plaintiff." Manganiello v. City of New York, No. 07 Civ. 3644, 2008 WL 2358922, at *7 (S.D.N.Y. June 10, 2008) (quoting Cervantes v. Jones, 188 F.3d 805, 810 (7th Cir. 1999)); see also Sclafani, 734 F. Supp. 2d at 296. That is, a complaining

---

[1] There is a split in the circuits concerning the complaining witness exception to absolute immunity for false grand jury testimony. Compare Jones v. Cannon, 174 F.3d 1271, 1287 n.10 (11th Cir. 1999) (stating that the court "expressly reject[s] carving out an exception to absolute immunity for grand jury testimony, even if false and even if [the officer] were construed to be complaining witness"); Kulwicki v. Dawson, 969 F.2d 1454, 1467 n.16 (3d Cir. 1992) (rejecting the complaining witness exception to absolute immunity for false grand jury testimony), with Harris v. Roderick, 126 F.3d 1189, 1199 (9th Cir. 1997) (adopting complaining witness exception to absolute immunity for false grand jury testimony); Anthony v. Baker, 955 F.2d 1395, 1400 (10th Cir. 1992) (holding that the question of immunity for testimony given by law enforcement officials "hinges on whether [they] acted as a complaining witness or a lay witness"); White v. Frank, 855 F.2d 956, 959 (2d Cir. 1988) (carving out a complaining witness exception to absolute immunity for false grand jury testimony).

The Supreme Court has granted certiorari in Rehberg v. Paulk, 611 F.3d 828 (11th Cir. 2010), dated March 21, 2011, to consider the question of "[w]hether a government official who acts as a 'complaining witness' by presenting perjured testimony against an innocent citizen is entitled to absolute immunity from a Section 1983 claim for civil damages." Rehberg v. Paulk, No. 10-788, at www.supremecourt.gov/qp/10-00788qp/pdf (Question Presented) (last visited Jan. 26, 2012). Petitioner's reply brief in Rehberg was filed in October 2011 and oral argument was held on November 1, 2011, but a decision has not yet been issued. See www.supremecourt.gov/oral_arguments/argument_calendars.aspx (last visited Jan. 26, 2012).

witness must merely "play[] such a role in initiating the proceedings that it can be said that the witness commenced or continued the proceedings against the plaintiff within the law of malicious prosecution." Mejia v. City of New York, 119 F. Supp. 2d 232, 272 (E.D.N.Y. 2000). For example, "[a] witness . . . who files a charging affidavit is clearly a complaining witness, but other witnesses may be considered complaining witnesses as well if the information they falsely gave the prosecutor induced the prosecutor to act." Id. Thus, in Watson v. Baker, No. 09-CV-3055, 2010 WL 3835047, at *1 (S.D.N.Y. Sept. 30, 2010), the court held that allegations that a defendant provided most of the information on which the prosecution predicated its case, and on whose false grand jury testimony the plaintiff's indictment was based "in part," were sufficient to suggest that the defendant "commenced or continued the prosecution." Id. at *6; see also Sclafani, 734 F. Supp. 2d at 296 ("This [complaining witness] exclusion [from absolute immunity] extends to grand jury testimony of an officer who participates in initiating a baseless prosecution.").

Here, the jury found, based on the evidence and testimony presented, that defendant provided false testimony to the grand jury in connection with plaintiff's underlying criminal action, which resulted in plaintiff being indicted for assault in the second degree. As such, defendant did more than merely testify at plaintiff's grand jury proceedings. Rather, he was responsible for providing the majority of the information upon which the grand jury based its decision to indict plaintiff, rendering defendant a complaining witness. As per the well-established case law of the Second Circuit, defendant is not entitled to absolute immunity from suit for such grand jury testimony.

Accordingly, defendant's motion is denied on these grounds.

III.     Heck v. Humphrey

Defendant argues that the Court erred in failing to dismiss plaintiff's claims based on the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 447 (1994), arguing that such claims are barred as a matter of law because permitting them to go forward would invalidate plaintiff's conviction for driving under the influence. However, the Second Circuit has explicitly held that Heck "acts only to bar § 1983 suits when the plaintiff . . . is in state custody." Green v. Montgomery, 219 F.2d 52, 61 n.3 (2d Cir. 2000) (citing cases and stating that "[b]ecause it does not appear that [plaintiff] is presently in state custody, his § 1983 action is not barred by Heck"); see also Huang v. Johnson, 251 F.3d 65, 75 (2d Cir. 2001) (finding that "Heck does not bar [plaintiff's] Section 1983 action" since he "has no habeas remedy because he has long since been released from . . . custody"); Leather v. Ten Eyck, 180 F.3d 420, 424 (2d Cir. 1999) ("Because [plaintiff] is not and never was in custody of the State, he . . . has no remedy in habeas corpus. Having escaped the jaws of Heck, [plaintiff] should therefore be permitted to pursue his § 1983 claim in the district court . . . ."). Since plaintiff was not in custody at the time he commenced the within action, Heck v. Humphrey does not bar his suit.

Moreover, the bar against civil suits as enunciated in Heck is limited to claims where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Heck, 512 U.S. at 487. "[A] defendant convicted of one offense but acquitted of another during the same proceedings may bring a malicious prosecution claim with respect to the acquitted offense if the two charges are 'distinct offenses involving distinct allegations.'" Washington v. Kelly, No. 03 Civ. 4638, 2004 U.S. Dist. LEXIS 23231, at *13 (S.D.N.Y. Nov. 12, 2004) (quoting Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir. 1989)); see also Williams v. City

of New York, No. 07 Civ. 3764, 2008 U.S. Dist. LEXIS 59932, at *14 (S.D.N.Y. Aug. 6, 2008) ("[W]here, as here, the criminal prosecution has resulted in conviction on some charges, but not all charges, the Court must determine whether the charges are sufficiently distinct to allow a malicious prosecution claim to proceed on the charge or charges for which the individual was not convicted."). The jury's verdict in favor of plaintiff here in no way implies the invalidity of his conviction for driving under the influence as plaintiff's claims for malicious prosecution and violation of his right to a fair trial are not related to his conviction for driving under the influence. Rather, they are based on the assault charges for which plaintiff was also tried. As the Court previously noted in its August 10, 2011 Memorandum Opinion and Order, "neither of the [assault] charges on which plaintiff claims he was maliciously prosecuted requires proof that plaintiff was under the influence of a controlled substance. And there is no contention that defendant's alleged fabrications were connected in any way to the issue of whether plaintiff was driving under the influence–the charge on which plaintiff was convicted." (Mem. Op. & Order dated Aug. 10, 2011, 8.)

In addition, in previously denying defendant's motion for judgment as a matter of law during the course of the trial, the Court stated:

> I do believe that in this case because [plaintiff's] arrest was limited on October 26, 2006, to the misdemeanor offenses of no insurance, possession of misdemeanor amount of drugs, i.e., Ambien and the DUI for taking Ambien, and then the later presentation [was] based on the completely separate and distinct offense of assault in the second degree when using the vehicle as the instrument is sufficient to distinguish this case from Heck v. Humphrey. And to bring it in line with those cases that recognize that where the offenses are separate and distinct, a conviction with regard to one of the charges does not preclude plaintiff from going forward with regard to the offense of malicious prosecution with regard to an acquittal on a

        separate and distinct charge.

(Tr. 824.) The Court still agrees with this conclusion.

        Accordingly, defendant's motion is denied on these grounds.

IV.     <u>The Grand Jury Records</u>

        Defendant argues that the Court erred in a variety of ways concerning the introduction of grand jury evidence. Specifically, defendant asserts that the Court wrongfully: (1) denied a joint motion to unseal the grand jury minutes pertaining to plaintiff's underlying criminal indictment; (2) denied defendant's motion to preclude the introduction of any grand jury testimony; (3) granted plaintiff's motion to preclude the testimony of two assistant district attorneys that defendant sought to call as witnesses; and (4) provided a false and prejudicial instruction to the jury.

     A.     <u>The Grand Jury Minutes</u>

        Defendant argues that the Court erred in refusing to unseal the grand jury minutes from plaintiff's underlying criminal case and also by denying his motion to preclude the introduction of any grand jury testimony, thereby allowing into evidence an incomplete grand jury record. This request has previously been dealt with by the Court on several occasions and is denied here again for those same reasons.

        As set forth in the Court's Memorandum Opinion and Order dated August 10, 2011, the parties previously sought an order from the Nassau County Court unsealing the grand jury records in plaintiff's underlying criminal action. The state court denied the parties' request on April 14, 2011, stating that petitioners had not demonstrated a compelling and particularized

need for access.  (Mem. Op. & Order dated Aug. 14, 2011, 2.)  In denying the request, the state court noted that, other than the testimony of defendant Stolz and officers Kevin Madden and Michael Hickey - to which the parties already had access - "the only remaining witnesses before the Grand Jury testified regarding the lab report and the effect of [Ambien] on an individual."  (Id.)  This Court denied the parties' request to unseal the grand jury minutes for the same reasons.  (Id. 8-9.)

Defendant now argues that the Court's refusal to unseal the grand jury minutes but to allow into evidence defendant's grand jury testimony resulted in the jury only being "presented with [defendant's] testimony on the issue of serious physical injury" as well as being "denied consideration of all other information that may have been before the Grand Jury."  (Def. Mem. of Law 12.)  However, it is undisputed that the missing evidence that the parties sought to have unsealed pertained solely to lab results and the effects of Ambien on an individual.  As the Court previously held, the parties failed to make a particularized showing of how this information is relevant to either the charges on which plaintiff claims he was maliciously prosecuted or to plaintiff's allegations that defendant's lies regarding the extent of his injuries procured the indictment for those charges.  (Mem. Op. & Order dated Aug. 10, 2011, 8.)  As such, the Court finds no error in its refusal to unseal the grand jury minutes or its denial of defendant's motion to preclude the admission of any grand jury testimony.

  B.  The ADA Testimony

    Defendant also takes issue with the Court's order granting plaintiff's motion to

preclude the testimony of ADA Brian Ahern and former ADA Brian Murphy.[2] This, too, was the subject of a pre-trial motion and was previously ruled on by the Court on October 6, 2011. According to defendant, without the grand jury records, "the testimony of the ADAs was absolutely crucial to [his] legal defenses" and precluding the testimony was prejudicial. (Def. Mem. of Law 13-14.)

However, as the Court noted in its Memorandum Opinion and Order dated October 6, 2011, defendant only included the ADAs in his list of potential witnesses for the first time on the eve of trial. It is undisputed that the ADAs were never disclosed to plaintiff as potential witnesses until this time, which the Court found to be in violation of defendant's Rule 26 obligations. By waiting to disclose the names of the ADAs until mere days before the trial began, and well after the close of discovery, defendant prevented plaintiff from deposing or otherwise seeking discovery from these potential witnesses. As Rule 37 directs, if a party fails to provide the information required by Rule 26(a) - i.e., the name, address and telephone number of "each individual likely to have discoverable information," Fed. R. Civ. P. 26(a)(1)(A)(i) - or to supplement it pursuant to Rule 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless failure was substantially justified or harmless." Fed. R. Civ. P 37(c)(1). As the Court previously found, defendant's failure to disclose the ADAs as potential witnesses was not justified or harmless, and as such, defendant was properly precluded from calling those individuals to testify at trial.

---

[2] The Court did allow limited testimony by former ADA Brian Murphy regarding plaintiff's characterization of how defendant was walking in the courtroom at the plaintiff's criminal trial, finding such testimony relevant since plaintiff had testified to it on his direct examination. (Tr. 766-67.)

Moreover, as the Court also previously found, the testimony that defendant sought to introduce from the ADAs was too remote to be probative of the primary issue in this case - whether defendant testified falsely to the grand jury. Permitting the ADAs to testify would only have served to confuse the issues in the case for the jury because the ADAs were not involved in the presentation of plaintiff's assault charge to the grand jury. Rather, they were instrumental in plaintiff's later criminal trial, which was largely irrelevant to the civil trial here. In addition, the evidence defendant sought to introduce through the ADAs was cumulative of evidence already in the trial record.

Accordingly, the Court finds no error in its decision to preclude the testimony of ADA Ahern and former ADA Murphy.

C. <u>The Jury Instruction</u>

Defendant's final argument with respect to the grand jury records is that the Court committed error when it provided the following instruction to the jury: "The only evidence presented to the Grand Jury as to the nature and seriousness of the injuries to the Defendant came from the Grand Jury testimony of the Defendant, which is an exhibit in this case." (Def. Ex. A, 20-21.) According to defendant, prior notice and an opportunity to object were not provided to counsel prior to the instruction being given. Defendant further argues that the instruction is prejudicial and false.

However, as the Court advised counsel prior to instructing the jury, it was compelled to include this instruction due to statements made by defendant's attorney during his closing argument. Specifically, defendant's counsel stated as follows during his summation:

[W]e really don't know, besides three transcripts that are before you,

> what the grand jury relied upon because the grand jury is a secret proceeding . . . The grand jury is a secret proceeding and we have none of the other evidence that was before them. There could have been all sorts of other evidence . . . finding that there was a serious physical injury in this case, or there was recklessness, but we don't know about it because it is a secret proceeding.

(Tr. 911-12.) After hearing these statements, the Court found that defense counsel was directing the jury to speculate as to non-existent evidence, which the Court considered improper. Accordingly, the Court advised defendant's counsel as follows:

> Mr. Cuthbertson, I added a section [to the jury charge] because I felt that you made an improper reference to the fact that there may have been other evidence before the grand jury concerning the personal injury and I instructed the jury based on your remarks that I considered inappropriate that that was the only testimony given with regard to the nature and seriousness of the injury.

(Tr. 964-65.) In addition, as defense counsel is well aware, and as discussed supra, the only missing grand jury testimony concerned lab reports and the effect of Ambien on an individual. Accordingly, defense counsel's comment on summation was misleading and improper and the Court's instruction to the jury was remedial and accurate.

Moreover, a jury charge is only erroneous "if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (quoting LNC Investments, Inc. v. First Fid. Bank, N.A., 173 F.3d 454, 460 (2d Cir. 1999)). Put another way, when determining whether a jury charge is erroneous, the court need only "satisfy itself that [the] instructions, taken as a whole and viewed in light of the evidence, show no tendency to confuse or mislead the jury as to principles of law which are applicable." Hathaway v. Coughlin, 99 F.3d 550, 552-53 (2d Cir. 1996) (alteration in original). As the Second Circuit has emphasized, "the particular words used in a jury instruction

may (depending on the circumstances) be less important than the meaning or substance of the charge as a whole." Owen v. Thermatool Corp., 155 F.3d 137, 139 n.1 (2d Cir. 1998). The Court is satisfied that the sentence about which defendant complains did not mislead the jury in any way. Instead, the jury instruction was remedial and appropriate to address defense counsel's misleading and improper comment on summation.

Based on the foregoing, defendant's motion is denied on these grounds.

V.      Medical Evidence

Defendant asserts that the Court erred in two respects with regard to medical evidence: (1) that the Court's denial of defendant's motion to limit the evidence concerning his physical injuries to the time period October 26, 2006 through June 11, 2008 allowed plaintiff to introduce numerous pieces of irrelevant and prejudicial evidence; and (2) that the Court's refusal to admit defendant's certified medical records deprived him of the ability to defend himself and to refute plaintiff's allegations that he lied about the extent of his injuries to the grand jury.

During discovery, the Court denied plaintiff's motion to compel evidence of any injuries defendant may have suffered prior to the automobile accident on October 26, 2006, without prejudice to renewal upon the completion of fact discovery. (Order of Boyle J., dated Oct. 14, 2010.) The motion was never renewed by the plaintiff.

Prior to the start of the trial, the Court heard argument from counsel on defendant's motion in limine to limit the medical evidence concerning his injuries to the time period October 26, 2006 through June 11, 2008. The Court acknowledged that despite the prior discovery ruling, it would permit plaintiff to introduce evidence of defendant's physical injuries prior to and

following the October 26, 2006 automobile accident. The Court stated that such evidence was "very, very relevant to the false statements before the grand jury" in that it was the plaintiff's contention that injuries incurred by the defendant prior to the accident were falsely imputed to the accident before the grand jury. (Tr. 4.) In fact, the Court acknowledged to counsel that if it "had those prior [discovery] rulings to do all over [it] would rule differently now that [it had] more of a feel of what's involved in this case." (Tr. 4.) As the Court stated in ruling on the <u>in limine</u> motion, evidence of any pre-existing condition or injuries that defendant may have had was directly relevant to the ultimate issue in this case - whether or not defendant testified falsely about his injuries to the grand jury - and bore directly on his credibility as a witness in this civil action. (Tr. 4-8.) Accordingly, the Court finds no error in its denial of defendant's motion to preclude medical evidence concerning defendant's injuries to prior to the accident on October 26, 2006.

With respect to the Court's refusal to permit defendant to introduce his certified medical records into evidence, the jury heard testimony from four separate medical experts concerning the nature and extent of defendant's injuries.[3] In addition, the jury received numerous medical records relating to defendant's injuries. The certified medical records that defendant sought to introduce were cumulative of the information already in evidence and therefore, the Court was well within its discretion to exclude it. See <u>United States v. Stewart</u>, 433 F.3d 273, 313 (2d Cir. 2006) (noting that the district court has discretion "to exclude . . . evidence for the purpose of keeping the record reasonably free of evidence that [is] cumulative, confusing, misleading or

---

[3] Plaintiff called Dr. Tasneem Sulaiman, a specialist in internal and nuclear medicines and Dr. Robert Tantleff, a radiologist, to testify as his medical experts. Defendant's experts included Dr. Nathanial Tindel and Dr. David Weissberg, both of whom are orthopedic surgeons.

irrelevant to the issues the jury [is] to decide"); Gierlinger v. Gleason, 160 F.3d 858, 871 (2d Cir. 1998) ("The trial court has considerable discretion in determining whether to admit or exclude evidence . . . and to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion, or by its cumulative nature."); see also Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Moreover, as the Court advised the parties, it had significant concerns over the fact that such records were not subject to cross-examination, which the Court found unfair to plaintiff. (Tr. 793.)

Specifically, defendant challenges the Court's exclusion of the following records from evidence: (1) five separate independent medical examinations ("IMEs") conducted of defendant between December 2006 and May 2009 (Def. Ex. H1, B2, K2, R2, and Y2); (2) Dr. Mark Zuckerman's treatment records with respect to defendant (Def. Ex. Q1, T1 and C2); and (3) decisions by the United States Social Security Administration and the New York State Retirement System finding defendant permanently disabled as a result of the automobile accident that occurred on October 26, 2006 (Def. Ex. A3 and Z2). With respect to the IMEs that plaintiff sought to introduce, none of the doctors who conducted the examinations were called to testify during the trial. Accordingly, as discussed above, plaintiff would be unable to cross-examine anyone with regard to the content of these records. In addition, a review of the IMEs indicates that they contain the same information as Dr. Tindel's treatment notes and letters, which were already admitted into evidence (Def. Ex. A1, L1 and R1.)

With respect to Dr. Zuckerman's treatment records, again defendant did not call Dr. Zuckerman, who is a neurologist. Yet, defendant wanted the Court to admit into evidence Dr. Zuckerman's treatment records to demonstrate that he suffered nerve damage as a result of the automobile accident, thereby precluding plaintiff from being able to cross-examine such evidence. The Court advised the parties that it found this to be unfair to plaintiff. If such evidence was as crucial to his case as defendant claims, he should have called Dr. Zuckerman to testify during the trial.

Finally, with respect to the Social Security and New York State Retirement System decisions, defendant asserts that they should have been admitted to demonstrate that he was permanently disabled as a result of the automobile accident. However, Dr. Tindel's medical records, which were in evidence, repeatedly state that defendant was disabled and could not return to work. (Def. Ex. A1.) In fact, Dr. Tindel's August 9, 2007 letter to Davis & Hersh, LLP specifically states that defendant "exhibits complete and total disability . . . [and] is unable to return to work as a police officer." (Def. Ex. R1.) The decisions by the Social Security Administration and New York State Retirement System were simply cumulative in light of the volume of testimony and medical records already in evidence concerning defendant's physical injuries. Lastly, the actual decisions of the Social Security Administration and the New York State Retirement System, dated September 17, 2009 and October 6, 2009, respectively, were issued after defendant's testimony before the grand jury and, therefore, are of remote relevance to the falsity, vel non, of defendant's grand jury testimony on June 11, 2008.

Accordingly, defendant's motion is denied on these grounds as well.

VI. <u>Additional Rulings Challenged by Defendant</u>

In a final catch-all section of his memorandum of law, defendant asserts that "[f]rom the beginning of the trial, the Court consistently made rulings which ensured that Plaintiff had every advantage while Defendant was entirely prevented from putting on any semblance of a defense." (Def. Mem. of Law 20.) Such rulings include: (1) the omission of voir dire questions during jury selection regarding potential jurors' prejudice against people who collect disability benefits or file personal injury lawsuits; (2) admitting plaintiff's legal bills without the ability to cross-examine plaintiff's criminal defense attorney; (3) purported "severe limitations" on defendant's cross-examination of plaintiff; (4) allowing plaintiff to display videos to the jury while not allowing defendant to display photographs of the October 26, 2006 automobile accident; (5) and precluding the testimony of the ADAs, which has already been addressed numerous times now by the Court. (<u>Id.</u> 20-22.)

The Court has reviewed the rulings set forth above and finds no error.

CONCLUSION

For the foregoing reasons, defendant's motion for judgment as a matter of law, or alternatively, for a new trial, pursuant to Federal Rules of Civil Procedure 50 and 59, is DENIED in its entirety.

**SO ORDERED:**

Dated: Central Islip, New York
January 26, 2011

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge